IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUNICIPALITY OF MONROEVILLE, TOWNSHIP OF EAST BRANDYWINE, and TOWNSHIP OF WEST BRADFORD, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VERIZON PENNSYLVANIA LLC and VERIZON COMMUNICATIONS, INC., <br><br> Defendants. | Civil Action No.: 2:15-cv-01100-DSC <br><br> Hon. David S. Cercone <br><br> *ELECTRONICALLY FILED* |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Plaintiffs Municipality of Monroeville, Township of East Brandywine, and Township of West Bradford (collectively, "Plaintiffs"), hereby move to compel Defendant Verizon Communications Inc. ("VCI") to fulfill its discovery obligations in two respects. First, VCI failed to designate and produce adequate corporate designee witnesses to testify with regard to topics set forth in two notices of deposition served by Plaintiffs under Fed. R. Civ. P. 30(b)(6). Second, VCI failed to produce documents and information responsive to several sets of discovery requests served by Plaintiffs, despite recent revelations in depositions that responsive documents exist, are within VCI's control, and are directly relevant to the disputes at issue. Plaintiffs' file this motion in order to compel VCI's response. Plaintiffs respectfully request that the Court grant this motion for the reasons identified herein.

**FACTUAL BACKGROUND**

I.   **Nature of the Lawsuit and Early Procedural History**

This action was originally filed on August 21, 2015. [Compl., ECF No. 1]. Plaintiffs are Pennsylvania governmental entities who entered cable franchise agreements with Defendant VCI's wholly-owned subsidiary and alleged agent Defendant Verizon Pennsylvania LLC ("Verizon PA"). [*Id.* at ¶¶ 2–3]. The agreements require Defendants to pay Plaintiffs 5% of annual gross revenue derived from the operation of Verizon's cable system within the Plaintiffs' respective jurisdictions. [*Id.* at ¶ 3]. The crux of Plaintiffs' lawsuit is their allegation that the Defendants failed to fully account for their gross revenues by omitting late payment fees received from customers, and consequently failed to perform under the agreement by underpaying Plaintiffs. [*Id.* at ¶ 4; *see also id.* at ¶¶ 41–55].

Importantly for purposes of the current discovery disputes, Plaintiffs filed the action as a putative class action, seeking to bring their claims not only on behalf of themselves, but also on behalf of other governmental entities in Pennsylvania *and* all other states in which VCI provides cable services through its state operating subsidiaries. [*See, e.g.*, *id.* at ¶¶ 2–4, 16, 32–33, 41–55]. Plaintiffs specifically alleged that the agreements between various Verizon entities and putative class members are substantially similar with respect to provisions relevant to the claims in the lawsuit; that Verizon managed in a centralized manner the accounting and payment of franchise fees due to franchising authorities; and that the underreporting and underpayment to franchise authorities was done in a systematic manner. [*Id.* at ¶¶ 3–5].

On October 9, 2015, VCI moved to dismiss the claims against it, and VCI and Verizon PA both moved to dismiss for lack of subject matter jurisdiction, arguing that there would no longer be any diversity between the parties if VCI was dismissed from the case. [Defs.' Mot.,

2

ECF No. 7; Defs.' Mem. in Supp., ECF No. 7-1 at 1]. VCI argued that Plaintiffs' factual allegations with respect to the agency relationship between VCI and Verizon PA were insufficient, and, therefore, Plaintiffs failed to state a claim against VCI. [Defs.' Mem. at 4–14]. Specifically, VCI claimed it was not a signatory to the franchise agreements and therefore owed no contractual or other obligations to Plaintiffs. [*Id.*]. The Court denied the motion to dismiss in its entirety on September 22, 2016, holding that the agency question was fact-intensive analysis and could not be resolved at the pleading stage. [Order of Sept. 22, 2016, ECF No. 29, at 1]. Defendants filed answers and amended answers shortly thereafter. [ECF Nos. 30–33].

## II. The Court's Case Management and Scheduling Orders and the Parties' Discovery Efforts

The Court entered an initial case management order on December 23, 2015. [ECF No. 18]. That order contemplated a first phase of fact discovery encompassing liability and class certification issues, with the potential for subsequent phases following resolution of Plaintiffs' anticipated class certification motion. [*Id.* at 1]. The Court set a June 24, 2016 deadline for the completion of the first phase of discovery. [*Id.* at 2].

### A. In 2016, VCI Delayed a Rule 30(b)(6) Deposition for Seven Months, Failed to Designate a Witness for One Topic, and Designated Witnesses Who Were Unable to Answer Numerous Crucial Questions

Plaintiffs served their first notice of a Rule 30(b)(6) deposition on VCI on February 25, 2016, setting a deposition date of Wednesday, March 9, 2016 and listing 12 topics for examination. [*See* 2016 Notice of Rule 30(b)(6) Deposition, attached as **Exhibit A**]. The deposition was postponed by agreement of counsel after VCI indicated that it could not produce witnesses competent to testify as to all noticed topics on the same date. The parties continued negotiating proposed dates for the deposition, and at one point agreed on May 2, 2016.

At a status conference on April 18, 2016, counsel for Defendants informed the Court and Plaintiffs' counsel that a labor stoppage was significantly affecting Defendants' business and could interfere with Defendants' ability to comply timely with its discovery obligations. [*See* Minute Order, ECF No. 21]. The first phase discovery deadline was extended to September 30, 2016. [*Id.*]. The following week, Defendants' counsel informed Plaintiffs' counsel that the ongoing strike prevented VCI from preparing and producing its corporate designee witnesses on May 2, 2016, and requested postponing the deposition. Defendants ultimately did not offer any available dates for the deposition until September 2016, when Defendants proposed October 19, 2016.

On that date, two witnesses were designated by VCI to testify with respect to 12 topics. Marie Lasota was designated to testify as to topics 1, 2, 3, 11, and 12. [Lasota Dep. at 7:2–12, attached as **Exhibit B**)]. Those topics were as follows:

> 1. The nature and corporate structure of Verizon Communications Inc., including: its predecessors, subsidiaries, subunits, and departments to the extent such information concerns the negotiation and execution of cable franchise agreements and the billing, accounting and remittance of franchise fees; the number of its employees; the general categories of job titles held by its employees and the duties performed by them.
>
> 2. The functions performed by Verizon Communications Inc. and/or its subsidiaries, affiliates or units with respect to the negotiation and execution of cable franchise agreements with local franchising authorities, including a description of the standard terms of the agreements and any distinctions among the agreements with local franchising authorities which may be material to the claims asserted by Plaintiffs in their Complaint.
>
> 3. The functions performed by Verizon Communications Inc. and/or its subsidiaries, affiliates or units with respect to: a) the process by which Verizon Communications Inc. obtains the rights to transmit programming content on its system; and b) the marketing of cable services to subscribers and the general public. More specifically, questions under this topic will probe the division of responsibility for these functions between the units of Verizon Communications Inc. and the manner in which certain operating subsidiaries (*e.g.*, Verizon Pennsylvania LLC) receive the benefits of these functions.

…

> 11. The relationship between Verizon Pennsylvania LLC and Verizon Communications Inc., including: the chain of command existing between the two and the identity of officers and executives who exist within that chain of command; the flow of capital between the two; the sharing of employees between them, and the division of responsibilities between the two as it relates to any of the activities described in topics numbered 2–7.
>
> 12. The relationship between Verizon Pennsylvania LLC and other subsidiaries, affiliates, and units of Verizon Communications Inc., including the flow of capital between them, the sharing of employees between them, and the division of responsibilities between them as it relates to any of the activities described in topics numbered 2–7.

[*See* Ex. A, 2016 Notice, at Topic List (Ex. A to Ex. A)].

The transcript shows that Ms. Lasota was not prepared to testify regarding all of the designated topics. For instance:

- She could not identify the Verizon entity that owns the Verizon FIOS trademark or the general Verizon trademark. [Ex. B, Lasota Dep. 21:13–22:1].

- She could not identify the Verizon entity that houses the "finance department" which purportedly determined that Plaintiffs' claims were meritless, as referenced in a letter sent by Verizon's in-house counsel to Plaintiffs' counsel prior to the filing of the complaint. [*Id.* at 22:3–11].

- She did not know whether Verizon Services Group, Inc. is a part of VCI. [*Id.* at 25:10–14].

- She did not know whether Verizon Corporate Resources, Inc. controlled accounts payable and accounts receivable for any other Verizon entities. [*Id.* at 27:18–25].

- She could not identify the specific names of any Verizon entities other than Verizon Corporate Resources, Inc. and Verizon Sourcing, LLC that provided "affiliate shared

services" to Verizon operating subsidiaries, including services related to acquiring franchise agreements. [*Id.* at 39:15–40:21; 45:18–46:6].

- She did not know which Verizon entity employed the franchise managers who worked in conjunction with Verizon in-house and outside counsel to actually negotiate franchise agreements with governmental entities. [*Id.* at 47:5–48:1; 51:21–52:10].

- She did not know which specific individuals comprised the "franchise steering committee" that had final authority within the Verizon family to approve franchise agreements entered into with Pennsylvania franchising authorities, or which specific Verizon entities employed those individuals. [*Id.* at 52:17–57:9].

- She did not know the what legal entity comprised Verizon's "marketing affiliate," despite the fact that the affiliate is directly involved in issues relevant to the case, the witness frequently referred to it, and its identity was specifically called for by Topic 3. [*Id.* at 51:24–52:10, 60:5–12; 62:20–23; 64:16–25; 68:5–20, 118:17–23].

- She did not know the identities or employers of the persons responsible for the ultimate day-to-day operations of operating subsidiaries such as Verizon Pennsylvania. [*Id.* at 91:6–93:11].

- She did not know how Verizon entities determine what franchise fees they owe to franchising authorities. [*Id.* at 95:18–25].

- She did not know what Verizon entity employs the "content team" that acquires the rights to transmit content over the FIOS network, even though that was specifically designated as an issue for examination in Topic 3. [*Id.* at 96:4–97:10].

- She did not know what Verizon entity pays for the marketing of the video services offered by the operating subsidiaries. [*Id.* at 105:9–106:3].

6

As to topics 4–9 in the 2016 Notice, VCI designated Robert Mutzenback. He was also not prepared to testify fully regarding his assigned topics.

For example, Topic 4 was "The functions performed by Verizon Communications Inc. (if any), and/or its subsidiaries, affiliates or units with respect to the billing of subscribers for services and the collection of funds from subscribers" [Ex. A, 2016 Notice, at Topic List (Ex. A to Ex. A)], yet Mr. Mutzenback could not answer how Verizon assesses late fees to its customers or what entities within Verizon are responsible for those decisions. [Mutzenback Dep. 26:4–18, 78:16–25, 79:18–23, attached as **Exhibit C**)]. He also could not identify which Verizon entities actually generate bills for Verizon PA customers. [*Id.* at 29:13–30:9, 34:10–15]. He could not give any specific information as to which Verizon entity or entities managed the two billing platforms used by Verizon that are the most relevant to video services and the late fees at issue in the lawsuit, other than "IT folks" and the "IT organization." [*Id.* at 57:12–24]. He did not know what process Verizon entities use to forgive late fees assessed to customers or the process Verizon entities use to determine whether to terminate delinquent customer accounts. [*Id.* at 79:1–17, 79:24–80:2].

Topic 5 was:

The functions performed by Verizon Communications Inc. (if any), and/or its subsidiaries, affiliates or units with respect to the accounting of funds received from subscribers for services, including the calculation of franchise fees payable to local franchise authorities pursuant to cable franchise agreements and a detailed description of the process by which those calculations are made.

[Ex. A, 2016 Notice, at Topic List (Ex. A to Ex. A)]. Mr. Mutzenback did not know what entity within Verizon is responsible for collection and accounting of payments from Verizon customers. [Ex. C, Mutzenback Dep. 36:9–37:18, 38:17–39:2]. He also did not know how

7

Verizon determines what portion of a late payment charge is attributed to video services when a customer purchases bundled services from Verizon. [*Id.* at 41:25–42:12].

> Topic 6 was:
>
> The functions performed by Verizon Communications Inc. (if any), and/or its subsidiaries, affiliates or units with respect to the reporting to local franchise authorities of funds received from subscribers and the calculated franchise fees payable to local franchise authorities.

[Ex. A, 2016 Notice, at Topic List (Ex. A to Ex. A)]. Mr. Mutzenback did not know any specifics regarding the process used by Verizon entities to report revenues and franchise fee remittances to local franchising authorities, including fundamental questions such as whether Verizon has centrally automated that process. [Ex. C, Mutzenback Dep. 74:19–75:21].

> Topic 7 was:
>
> The functions performed by Verizon Communications Inc. and/or its subsidiaries, affiliates or [units] with respect to the remittance of franchise fees to local franchise authorities.

[Ex. A, 2016 Notice, at Topic List (Ex. A to Ex. A)]. Mr. Mutzenback could not answer basic questions regarding this topic, such as which bank accounts are used by Verizon entities to remit franchise fees to local franchise authorities, or what process Verizon follows to resolve disputes or problems that arise regarding remittance payments. [Ex. C, Mutzenback Dep. 76:1–21].

Neither witness was designated to answer questions under Topic 10, which related to the physical properties used by Verizon entities in the course of providing video services to customers as well as the accounting, billing, and franchise fee remittance functions, as well as which specific Verizon entities were responsible for owning, leasing, maintaining, or operating those facilities. [Ex. A, 2016 Notice, at Topic List (Ex. A to Ex. A)].

### B.   In 2017, VCI Failed to Designate any Corporate Designee Witness to Testify Regarding Certain Noticed Topics

Shortly after those depositions, the deadline for the first phase of discovery was extended to April 28, 2017. [ECF No. 36]. In April 2017, the first phase discovery deadline was extended again to July 31, 2017. [ECF No. 39]. In light of the failure of Lasota and Mutzenback to testify competently regarding the topics listed in Plaintiffs' first Rule 30(b)(6) deposition notice, as well as new information discovered through additional depositions and documents produced belatedly by Defendants, Plaintiffs served a second Rule 30(b)(6) deposition notice on VCI on May 25, 2017, setting the deposition date on July 25, 2017. [2017 Notice of Rule 30(b)(6) Deposition, attached as **Exhibit D**]. Nine topics were listed. [*Id.* at Topics List (Ex. A to Ex. D)].

In an email dated June 30, 2017, Defendants' counsel indicated that he was contemplating making an objection to the noticed topics based on his belief that "there is almost no chance of holding VCI in the case and certifying a class that extends beyond Pennsylvania." [Email dated June 30, 2017, attached as **Exhibit E**]. On July 20, 2017, a status conference was held and the Court was informed that there was still outstanding discovery expected to be completed in August, but the discovery deadline was not formally extended. [ECF No. 43]. By July 21, 2017, Defendants still had not agreed to produce a witness on July 25 or any other date. On August 22, 2017, defense counsel indicated he would be meeting with potential witnesses to determine a date. On September 1, 2017, Defendants offered to produce a corporate designee on October 11, 2017, and another fact witness, Aileen Santos, on October 12. On October 9, 2017, defense counsel informed Plaintiffs' counsel that Ms. Santos would not be able to make her deposition. Rather than scheduling two rounds of travel, the parties agreed to postpone both depositions until they could be held on successive dates in one place. The next day, the parties

agreed to hold the corporate designee deposition on November 14, 2017 in New York City, and to conduct Aileen Santos' deposition the following day.

The corporate designee witness produced by VCI was J. Daniel Mason. He was designated to testify only with respect to topics 1–4 in the 2017 notice.[1] Ms. Santos was not designated as a corporate representative for any topics. As a result, VCI simply failed to produce any designee for topics 5–9 in the 2017 notice. Defendants did not file any objections to the notice, move to quash the deposition, or even inform Plaintiffs' counsel in advance that no witness would be produced with respect to those topics.

> **C.    VCI Failed to Produce Numerous Documents in a Timely Fashion and Still Has Not Produced Several Important Categories of Documents**

Plaintiffs served their first written interrogatories and requests for production of documents on each Defendant on May 19, 2016. Defendants served responses and objections on June 20, 2016 and indicated that further responses would be provided by July 8, 2017. Defendants withheld some documents from production until a protective order could be entered and approved by the Court, which was eventually accomplished on August 17, 2016. [ECF No. 26].

Two critical documents responsive to the first requests were not served by Defendants until April 24, 2017, many months *after* the first Rule 30(b)(6) depositions and the deposition of fact witness Mark Scovic. The first is an organizational chart of VCI, showing several subsidiaries and subunits of VCI; even this document was heavily redacted when it was produced. The second is a "work requirements document" that was created at the initiative of

---

[1] The transcript for Mr. Mason's deposition is not yet available. To the extent Defendants dispute any factual representations herein, Plaintiffs will timely supplement this motion with appropriate citations once the transcripts are available.

10

Mr. Scovic, intended to cause Verizon's IT personnel to correct problems on billing software platforms that contributed to the underpayments at issue in this case.

Defendants also failed to produce documents Plaintiffs requested that were in Defendants' possession and/or control. On May 23, 2017, Plaintiffs served a second set of requests for production on VCI. RFP Nos. 8-20 requested contracts between VCI and its services corporations and between VCI's services corporations and VCI's state affiliate and co-defendant, Verizon Pennsylvania LLC. [Pls. Second RFP to VCI, attached as **Exhibit F**].[2] RFP No. 23 requested reports showing annual franchise fee remittance statements for all local franchise authorities outside Pennsylvania. [*Id.*]. RFP No. 25 requested documents regarding "overlays and adjustments" regarding late fees charged to franchising authorities outside Pennsylvania. [*Id.*].[3]

VCI objected to RFP Nos. 8-20, but stated it was willing to make a reasonable effort to locate any responsive documents and produce any such documents to the extent they existed. [Answers and Objections to Pls.' Second RFP to VCI, attached as **Exhibit H**]. VCI also objected to RFP Nos. 23 and 25, claiming they were improper prior to class certification, and also claiming, based on discovery produced at the time, VCI was not involved in providing cable services anywhere. [*Id.*] To date, VCI has not produced any documents responsive to these requests.

Yet Plaintiffs learned for the first time during the 30(b)(6) deposition of Daniel Mason on November 14, 2017, that contracts between and among Verizon's state operating subsidiaries

---

[2] Plaintiffs requested similar documents by way of their original requests for production of documents directed to VCI. [Answers and Objections to Pls. First RFP to VCI, RFP. No. 7, attached as **Exhibit G**].

[3] Plaintiffs requested similar documents by way of their original requests for production of documents directed to VCI. [Ex. G, Answers and Objections to Pls. First RFP to VCI, RFP. Nos. 4 and 6]

and its "shared services" subsidiary corporations/affiliates do in fact exist. Plaintiffs also discovered for the first time during the deposition of Aileen Santos on November 15, 2017, that at the direction of Verizon's centralized legal and regulatory compliance departments, she in fact calculated a "catch-up payment" to be made to New York franchising authorities in 2016 or 2017 on behalf of VCI's New York-based operating subsidiary, while this litigation was pending. [Santos Dep. 56:21–59:17, 91:16–93:18, 101:14–102:12, attached as **Exhibit I**] Ms. Santos further testified that VCI's Delaware-based operating subsidiary also made an overlay in the 2014 or 2015 timeframe. [Santos Dep. 24:22–25:16, 28:12–29:13, 56:4–20]. She also confirmed that documents were created that demonstrated and illustrated the calculated overlays and the adjustment payments made to the local franchising authorities. [Santos Dep. 30:5–22, 101:14–102:12].

Despite Mr. Mason's and Ms. Santos' testimony, Defendants have never produced documents related to these two issues (the contracts between Verizon entities and the corrective payments made by VCI subsidiaries other than Verizon Pennsylvania), which bear directly on class certification issues, agency issues, and damages and are essential to Plaintiffs' prosecution of this case.

### D. VCI Made an Improper and Misleading Objection to a Critical Interrogatory

Plaintiffs served a second set of interrogatories on VCI on April 23, 2017. Defendant's answers and objections were served on June 22, 2017. [Answers and Objections to Pls.' Second Irogs to VCI, attached as **Exhibit J**]. Interrogatory 24 stated:

> If any overlays or adjustments were made to retroactively correct allocated late payment amounts in states other than Pennsylvania as a result of billing errors in RIBS or CRIS, identify when the payments were made, to which LFAs they were made, and the amounts of the overlay payments.

[*Id.* at 7]. Defendant VCI's answer was:

> *See* General Objections. VCI objects on the ground that prior to class certification, this Interrogatory is overly broad, unduly burdensome, and not proportional to the needs of the case. VCI further objects on the ground that VCI provides no service to customers, has no Cable Service subscribers, has no obligation to remit Franchise Fees to any of the Plaintiffs, and has no obligation to create or maintain any documents or information with respect to Franchise Fees owed to the Plaintiffs and therefore VCI has no responsive information to provide.

[*Id.*]. The last sentence of the response states "VCI has no responsive information to provide." Though styled as an objection, this representation was simply false. Again, Plaintiffs discovered for the first time during the deposition of Aileen Santos on November 15, 2017, that VCI's New York-based operating subsidiary in fact made the exact type of "overlays or adjustments" referenced in the interrogatory at some point in 2016 or 2017, and a similar overlay or adjustment was made by VCI's Delaware-based operating subsidiary in the 2014 or 2015 timeframe.

### III.     Summary of VCI's Discovery-Related Conduct

As shown above, a consistent theme emerged during discovery: Defendants, and particularly VCI, have continuously delayed and obstructed Plaintiffs' efforts to obtain information necessary to support their allegations regarding the propriety of class certification, the nature of the agency relationship between VCI and its operating subsidiaries, and the scope of the damages potentially suffered by Plaintiffs and putative class members.

All told, in the past two years, Plaintiffs have spent a combined 14 months waiting for VCI to produce corporate designee witnesses, only to eventually discover that those witnesses were unwilling, unable, or not even formally designated by VCI to testify with respect to the noticed topics. This practice was accompanied by Defendants' tendency to delay production of critical responsive documents until just before or in several cases, *after* the depositions of

witnesses who were familiar with those documents. Further, numerous responsive documents have never been produced by Defendants despite their indisputable relevance and importance to issues of agency, class certification, and damages.

## ARGUMENT

Fed. R. Civ. P. 37(a)(3)(B) allows for a party to compel discovery when a corporation fails to make a designation under Rule 30(b)(6), fails to answer an interrogatory under Rule 33, or fails to produce documents under Rule 34. Plaintiffs file this motion to compel proper designees for various Rule 30(b)(6) topics, and to compel answers and production under Rules 33 and 34. Plaintiffs' motion should be granted for the following reasons.

**I.   The Court Should Compel VCI to Produce Corporate Designee Witnesses to Testify Competently with Respect to Certain Topics Outlined in Plaintiffs' Rule 30(b)(6) Notices of Deposition**

Fed. R. Civ. P. 30(b)(6) states in relevant part:

> A party may … name as the deponent a … corporation … and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. … The persons so designated shall testify as to the matters known or reasonably available to the organization.

This imposes burdens on the discovering and designating parties: the discovering party "is required to describe with reasonable particularity the matters on which examination is requested;" and the designating party is required to "produce one or more witnesses knowledgeable about the subject matter of the noticed topics." *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008). Furthermore, "[t]he designating party has a duty to designate more than one deponent if necessary to respond to relevant areas of inquiry on the noticed topics" and must "make a conscientious, good-faith effort to designate

14

knowledgeable persons for Rule 30(b)(6) depositions and … prepare them to fully and unevasively answer questions about the designated subject matter" *Id.* at 538-39. Finally, "if an organization designates a witness it believes in good faith would be able to provide knowledgeable responsive testimony and it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent." *Id.* at 540.

Here, Defendants have failed to provide designees who could adequately respond to the topics noticed in Plaintiffs' first and second 30(b)(6) notices. As explained above, pursuant to Plaintiffs' 2016 Notice, VCI's designees were not properly prepared to provide answers to the listed topics. And, pursuant to Plaintiffs' 2017 Notice, VCI did not even produce a designee for topics 5–9. Since Defendant is obligated to produce witnesses that can adequately answer the listed topics, the Court should grant Plaintiffs' motion and instruct Defendant to designate adequate deponents for all of the topics listed in the 2016 Notice and for topics 5–9 of the 2017 Notice, or explain why it cannot.

**II.    The Court Should Compel VCI to Produce Documents and Information Responsive to Plaintiffs' Requests for Production**

Fed. R. Civ. P. 26(b)(1) allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Here, and pursuant to Rule 26(b), the Plaintiffs seek the following documents and information: 1) the contracts requested by RFP Nos. 8-20 of Plaintiffs' second set of requests for production and RFP No. 7 of Plaintiffs' first set of requests for production; 2) the "overlay and adjustment" documents and information, and other accounting, calculation and remittance reports and documents regarding franchise and late fees requested by RFP Nos. 23 and 25 of Plaintiffs' second set of requests for

15

production, RFP Nos. 4 and 6 of Plaintiffs' first set of requests for production, and ROG No. 24 of Plaintiffs' second set of interrogatories.

With respect to the contract-related documents, VCI has yet to produce them, despite Mr. Mason's testimony that contracts of that nature indeed exist. The Court should order VCI to produce those documents pursuant to RFP Nos. 8–20 of Plaintiffs' second set of requests for production of documents and RFP No. 7 of Plaintiffs' first set of requests for production of documents to VCI since the requested documents exist and since Defendant stated it would produce them in the event they did exist. Additionally, the documents are relevant, discoverable and proportionate to the needs of the litigation since they go directly to 1) the relationships between and among VCI, the state operating subsidiaries, and the "shared corporate services" subsidiaries, and 2) which Verizon entities were responsible for or in control of the conduct at issue.

With respect to the franchise fee, late fee and overlay and adjustment documents and information, VCI made representations that those documents and information did not exist, when they clearly do, as explained above. The overlay and catch-up payments made by the Delaware and New York operating subsidiaries are *exact* type of "overlays or adjustments" referenced in the Plaintiffs' second set of requests for production, and they are central to the issues and defenses in this case because they could support Plaintiffs' positions 1) that the billing error affecting the representative Plaintiffs also affected members of the putative class outside of Pennsylvania, thus supporting class certification, and 2) that the billing error was not unique to Verizon Pennsylvania because Verizon entities used centralized billing and accounting systems managed and controlled by VCI's "shared services subsidiaries," further illustrating that the state operating subsidiaries were not in control of the conduct at issue in this case. The overlay and

adjustment documents are also relevant to the damages at issue in this case because they likely show that the Verizon entities at least partially remedied the underpayments to Plaintiffs and the putative class members.

For these reasons, VCI should be required to produce the requested documents and information. As a holding company that is either an indirect or direct and sole or majority owner of all of the relevant companies and subsidiaries, VCI has the control and authority necessary to ensure production of these documents, even if it does not itself possess them. Additionally, these documents and information are directly relevant in order to determine the scope of VCI's conduct, the scope of the proposed class, and the amount of potential damages. Accordingly the Court should order VCI to produce the documents and information requested by RFP Nos. 23 and 25 of Plaintiffs' second set of requests for production, RFP Nos. 4 and 6 of Plaintiffs' first set of requests for production, and ROG No. 24 of Plaintiffs' second set of interrogatories.

## **CONCLUSION**

For each of the reasons explained above, the Court should grant Plaintiffs' motion and enter the attached proposed order.

Dated:  December 6, 2017

Respectfully submitted,

By: /s/ *Edwin J. Kilpela, Jr.*
Edwin J. Kilpela, Jr.
ekilpela@carlsonlynch.com
Gary F. Lynch
glynch@carlsonlynch.com
Jamisen A. Etzel
jetzel@carlsonlynch.com
**Carlson Lynch**
**Sweet Kilpela & Carpenter, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone:  (412) 322-9243
Fax:  (412) 231-0246

Daniel S. Cohen
**COHEN LAW GROUP**
1000 Gamma Drive, Suite 305
Pittsburgh, PA 15238
Tel.: (412) 447-0130
Fax: (412) 447-0129

*Attorneys for Plaintiffs*

## RULE 37 CERTIFICATION

I, Edwin J. Kilpela, Jr., hereby certify that, pursuant to Rule 37(a)(1) counsel for Plaintiffs conferred with counsel for Defendant in good faith in an effort to obtain the documents and information herein without court action.

*/s/ Edwin J. Kilpela, Jr.*
Edwin J. Kilpela, Jr.

## CERTIFICATE OF SERVICE

I, Edwin J. Kilpela, Jr., hereby certify that a true and correct copy of Plaintiffs' Motion to Compel Discovery was filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record via a notification of electronic filing (NEF) on this 6th day of December, 2017.

/s/ *Edwin J. Kilpela, Jr.*
Edwin J. Kilpela, Jr.